UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| DIANNA LYNN NEWSOME, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 14-179-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Dianna Lynn Newsome ("Newsome" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").  [Record Nos. 12, 13]  Newsome argues that the administrative law judge ("ALJ") assigned to her case erred by finding that she is not entitled to a period of disability and disability insurance benefits. [Record No. 12]  She requests that her case be remanded for further administrative proceedings or, in the alternative, remanded for calculation of benefits.  [Record No. 12-1] The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed.  [Record No. 13]  For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Newsome.

**I.**

On November 14, 2011, Newsome filed an application under Title II of the Social Security Act ("the Act") for a period of disability and disability insurance benefits. [Administrative Transcript "Tr.," p. 50]   On March 6, 2012, the Social Security

Administration ("SSA") denied Newsome's claim.  [Tr. 78]  The SSA then affirmed its denial upon reconsideration.  [Tr. 83]

Newsome, along with her attorney Kyle Reeder, appeared by video conference before ALJ Jerry Meade on June 12, 2013 for an administrative hearing.  [Tr. 32-49]  Vocational expert ("VE") Casey B. Vass also appeared for the hearing via telephone conference.  [Tr. 32]  On July 22, 2013, the ALJ issued his opinion, finding that Newsome was not disabled under sections 216(i) and 223(d) of the Act.  42 U.S.C. §§ 416(i), 423(d).  [Tr. 24] Newsome appealed that decision to the SSA Appeals Council.  However, the Appeals Council denied the Claimant's request for review on August 29, 2014.  [Tr. 1-5]

Newsome alleges that her disability began on November 19, 2009. [Tr. 51]  At the time of her alleged injury, Newsome was forty-five years old.  [Tr. 50]  She has a high school education and previously worked as a school kitchen manager.  [Tr. 36]  In her original disability application and subsequent application for reconsideration, Newsome claims she suffers from migraine headaches, anxiety, depression, carpal tunnel syndrome, degenerative arthritis, fibromyalgia, neck pain, and hand pain. [Tr. 50, 64]

After considering the testimony at the administrative hearing and reviewing the record, the ALJ concluded that Newsome had not engaged in substantial gainful activity since the onset of her alleged disability.  [Tr. 19]  The ALJ also found that Newsome suffers from the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the lumbar spine, osteoarthritis, migraine headaches, and mild left peroneal neuropathy.  *Id.*  However, the ALJ determined that Newsome's severe impairments did not meet or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix I.  [Tr. 20]  The ALJ also determined that Newsome retained

the residual functional capacity ("RFC") "to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl.  She can never climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to excessive vibration and hazards such as moving machinery and unprotected heights."  [Tr. 20]

After considering Newsome's age, education, work experience, and RFC, the ALJ concluded that Newsome is capable of performing her past relevant work as a kitchen manager.  [Tr. 22]  Alternatively, the ALJ held that a significant number of jobs exist in the national economy that Newsome could perform, including mailroom clerk, laundry worker, and assembler.  [Tr. 23]  As a result, the ALJ determined that the Claimant was not disabled from November 19, 2009 through the date of the decision.  *Id.*

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the

claimant must show that she suffers from a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of disability based on medical evaluations and current work activity, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work.  If she can, she is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

-4-

The substantial evidence standard presupposes that a zone of choice exists within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## III.

Newsome asserts that the ALJ's RFC finding is not supported by substantial evidence.  [Record No. 12-1, pp. 10-14]  She also argues that the ALJ erred by relying on the VE's answers to incomplete hypothetical questions.  *Id.* at 14-15.

### A.    Residual Functional Capacity

Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 416.946(c).  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010).  An ALJ's RFC finding will be upheld where it is supported by substantial evidence. 42 U.S.C. § 405(g).

The Claimant asserts that the ALJ failed to properly evaluate her RFC.  [Record No. 12-1, pp. 10-14]  Specifically, Newsome claims that the ALJ erred by (i) failing to properly weigh the opinion of consultative examiner, Dr. Leigh A. Ford, and (ii) by "making improper credibility findings as to Plaintiff's testimony."  *Id.*  She asserts that these alleged errors resulted in the ALJ's incorrect finding that she had the RFC to perform light work.  *Id.*

### 1.      Consultative examiner

Newsome's claim that the ALJ failed to properly consider and weigh Dr. Ford's opinion is directly refuted by the record.  Newsome is correct that, regardless of the opinion's source, the ALJ must weigh all medical opinions he receives.  20 C.F.R. § 404.1527(c).  Further, the ALJ should generally give controlling weight to treating sources. 20 C.F.R. §§ 404.1527(c)(2).  If the ALJ decides not to give controlling weight to the treating source's opinion, the regulations require him to explain his reasoning for doing so. *Id.*  Additionally, the ALJ should generally give more weight to sources who have examined the claimant than sources who have not examined the claimant.  20 C.F.R. 404.1527(c)(1).

Newsome contends that, in his RFC analysis, the ALJ failed to explicitly weigh all of the findings made by Dr. Ford who conducted a consultative examination of Newsome on February 15, 2012.  [Record No. 12-1, pp. 11-12]  According to Newsome, if the ALJ would have properly weighed Dr. Ford's opinion, he would have added certain limitations to her RFC.  *Id.*  In particular, Newsome calls attention to Dr. Ford's observations that she "has minor gaps in insight and normal decision making skills;" "her coping skills appear overwhelmed;" "she can understand, remember, and carry out *simple, repetitive tasks*;" she "is moderately limited in her ability to tolerate stress and pressure of day to day employment;" and "she is moderately limited in her capacity to respond appropriately to

-6-

supervision, coworkers, and work pressures in a work setting." [Record No. 12-1, p. 11 (*quoting* Tr. 305)] Relying on *Bray v. Astrue*, No. 11-96-DLB, 2012 WL 71015 (E.D. Ky. Jan. 10, 2012), Newsome further argues that because the ALJ did not give controlling weight to the opinions of her treating sources, the ALJ was required to explain the weight given to Dr. Ford's opinion. [Record No. 12-1, p. 12] However, the ALJ's decision and the administrative record establish that the ALJ did properly weigh Dr. Ford's opinion in the second and fourth steps of his analysis.

The ALJ first considered Dr. Ford's opinion when assessing Newsome severe impairments at step two of the disability analysis. [Tr. 20] Even though Newsome listed anxiety and depression in her application for disability, the ALJ concluded that neither condition severely impaired the Claimant. *Id.* For his conclusion, the ALJ relied heavily on Dr. Ford's report which he refers to as the "psychological evaluation [of] February 15, 2012." *Id.* The ALJ observes that Dr. Ford found Newsome "to have normal mental status, with intact memory, concentration, and attention." *Id.* He also mentions the parts of Dr. Ford's report that demonstrate that Newsome is capable of caring for her personal needs, managing her money, and engaging in regular social activity. *Id.* The ALJ's analysis of Dr. Ford's opinion is consistent with her report, attached to his decision as Exhibit 3F. [Tr. 303-305]

Moreover, the ALJ's ultimate conclusion that Newsome was not severely impaired by anxiety or depression is supported by other sources in the record. In Newsome's most recent medical records, Dr. Martin, her primary care physician, noted that she was in "no acute distress" and that she "demonstrates appropriate mood and affect." [Tr. 397, 401] Dr. Martin's records also confirm that his decision to prescribe Newsome medication for

depression and anxiety was solely based on Newsome's subjective complaints.  [Tr. 218-251]

After determining that Newsome was not severely impaired by any of her psychological complaints, the ALJ had no reason to delve deeply into whether those complaints affected her ability to work.  The regulations only require an ALJ to assess "*relevant* medical and other evidence" when determining a claimant's residual functional capacity.  20 C.F.R. § 404.1545 (emphasis added).  In short, the ALJ was not obligated to reassess at step four evidence that concerned issues he resolved at step two.  Nevertheless, the ALJ explicitly assigned "great weight" to the "State agency psychological consultant's mental assessment" at the end of his RFC analysis on the basis that the assessment "is consistent with the record as a whole."[1]  [Tr. 22]

Contrary to Newsome's assertions, Dr. Ford's findings support the ALJ's decision not to place mental restrictions on Newsome's ability to perform light work.  Dr. Ford found that Newsome's attention, concentration, memory capacities, and capacity for abstraction "appear to be normal."  [Tr. 304-305]  Additionally, Dr. Ford observed that Newsome's "[t]hought content was appropriate to mood and circumstances" and her "[o]rganization of thought was logical and goal-oriented."  [Tr. 304]  Dr. Ford found her "fund of knowledge" and intelligence were "average," her judgment was "adequate," and her "reality testing" was "good."  [Tr. 304-305]  She represents the few deficits she found as "minor" or "moderate."

---

[1]       Even though the ALJ does not specifically refer to Dr. Ford by name in his RFC analysis, he does cite to Exhibit 4A attached to his decision.  [Tr. 22]  The only psychological examination mentioned in Exhibit 4A is the one performed by "Christopher A. Catt Consulting" on February 15, 2012.  [Tr. 69]  Dr. Ford's report shows that she is employed by "Chris Catt Consulting, PSC" and that her examination of Newsome took place on February 15, 2012.  [Tr. 303]

[Tr. 305]  Lastly, she observes that Newsome's "ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected."  *Id.*  She does not state that Newsome should be limited to simple and repetitive tasks as Newsome suggests in her motion for summary judgment.  [Record No. 12-1, p. 11]

The ALJ's decision and the administrative record establish that the ALJ did not err in his evaluation of Dr. Ford's medical opinion.  Rather, he thoroughly considered her report and gave it appropriate weight in his analysis.

### 2.  Newsome's credibility

In *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 247, the Sixth Circuit held that the task of evaluating the credibility of witnesses, including the credibility of the claimant, belongs to the ALJ, not to the reviewing court.  However, the *Rogers* Court also concluded that an ALJ's credibility determinations "must find support in the record."  *Id.*  Because the ALJ cited specific evidence in the record to support his assessment of Newsome's credibility, his credibility determination will not be disturbed upon review.

Newsome particularly objects to the ALJ's finding that her treatment history was inconsistent with her testimony at the hearing.  [Record No. 12-1, p. 13]  The ALJ stated, "the record shows the claimant is primarily seen for follow-ups, with refills of the same medication."  [Tr. 22]  Newsome claims that the ALJ's conclusion ignores the fact that Dr. Martin referred her to pain management, a psychologist, and a rheumatologist and that he prescribed Cymbalta for depression, Ativan for anxiety, and Naproxen for neck pain.  [Record 12-1, p. 13]  However, Newsome's list of referrals and medications in no way undermines the ALJ's conclusion.

-9-

A comparison of Newsome's medical records before November 19, 2009, her alleged onset date, with her medical records from after that date reveal few changes to her treatment plan.  Newsome was diagnosed with and taking medication for anxiety as early as 2007.  [Tr. 244]  Dr. Martin first prescribed medication for depression in June of 2009.  [Tr. 234]  As the ALJ observed, Dr. Martin re-filled the prescription several times for a similar dosage.  [Tr. 228, 232]  Newsome reported she had rheumatoid arthritis upon initially presenting to Dr. Martin for treatment in 2004.  [Tr. 250]  He only referred her to a rheumatologist when she came in for an appointment in June of 2009 and reported, "I think I have fibromyalgia."  [Tr. 234]  The record does not indicate that she was ever diagnosed with fibromyalgia.  Dr. Martin prescribed Naproxen for her neck pain in March of 2009.  [Tr. 236]  In 2011, she reported to Dr. Martin that "the pain in her neck has resolved."  [Tr. 218]

The record confirms the ALJ's conclusions about Newsome's treatment.  The evidence cited in the Claimant's motion does not contradict those conclusions.  Her assertion that the ALJ also failed to consider her testimony about aggravating factors is also unfounded.  In a fairly lengthy paragraph, the ALJ summarized Newsome's testimony regarding her pain and the limitations it caused.  [Tr. 21]  The ALJ continued by describing the medical evidence that revealed much milder symptoms than Newsome's testimony indicated.  The ALJ's decision clearly demonstrates that he relied on substantial evidence in the record for his conclusion that the Claimant's credibility was "only fair."  [Tr. 21]  Accordingly, this Court will give deference to his determination.

### B.    Newsome's ability to perform past relevant work

Finally, Newsome argues that the ALJ erred by relying on the VE's testimony that she is capable of performing her past work as a kitchen manager.  [Record No. 12-1, pp. 14-

15]   A VE's testimony, including his answers to hypothetical questions that "accurately portray [the claimant's] individual physical and mental impairments," may be relied upon by the ALJ as substantial evidence.  *Varley v. Sec. of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Newsome claims that, because the ALJ improperly calculated her RFC, the ALJ also incorrectly framed the hypothetical questions he posed to the VE, resulting in reversible error.  [Record No. 12-1, pp. 14-15]  The Court has already determined that the ALJ's RFC finding was supported by substantial evidence.  Because he did not err in his RFC determination, he also did not err by using that same RFC in the questions he asked the VE. Therefore, substantial evidence supports his conclusion that Newsome is able to engage in substantial gainful employment as a kitchen manager.

## IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     Plaintiff Dianna Lynn Newsome's Motion for Summary Judgment [Record No. 12] is **DENIED**.

2.     Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

3.     The decision of Administrative Law Judge Jerry Meade will be **AFFIRMED** by separate Judgment entered this date.

This 2nd day of October, 2015.



Signed By:

***Danny C. Reeves***

**United States District Judge**